UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FATEEM L. JACKSON, | CASE NO. 1:07-cv-01414-LJO-SMS PC |
| Plaintiff, | FINDINGS AND RECOMMENDATIONS RECOMMENDING DISMISSAL OF CERTAIN CLAIMS AND DEFENDANTS |
| v. | |
| CDCR, et al., | (Doc. 14) |
| Defendants. | OBJECTIONS DUE WITHIN THIRTY DAYS |

**I.  Screening Requirement**

Plaintiff Fateem L. Jackson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983. Plaintiff filed this action on September 27, 2007. On May 16, 2008, the Court issued an order requiring Plaintiff either to file an amended complaint or notify the Court of his willingness to proceed only on the claims found to be cognizable. Plaintiff opted to file and amended complaint. Currently before the Court is Plaintiff's first amended complaint ("the complaint") filed June 24, 2008.

The Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1),(2). "Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall

///

1

dismiss the case at any time if the court determines that . . . the action or appeal . . . fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii).

"Rule 8(a)'s simplified pleading standard applies to all civil actions, with limited exceptions," none of which applies to section 1983 actions. Swierkiewicz v. Sorema N. A., 534 U.S. 506, 512 (2002); Fed. R. Civ. P. 8(a). Pursuant to Rule 8(a), a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a). "Such a statement must simply give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Swierkiewicz, 534 U.S. at 512. However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitze v. Williams, 490 U.S. 319, 330 n.9 (1989). "[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled." Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

## II.     Plaintiff's Claims

### A.     Summary of the Complaint

Plaintiff is a state prisoner currently housed at Kern Valley State Prison in Delano, California. The events giving rise to Plaintiff's claims allegedly occurred while Plaintiff was housed at the California Correctional Institution ("CCI") in Tehachapi, California. Plaintiff alleges violations of his rights under the Fourth and Eighth Amendments, and the Due Process Clause of the Fourteenth Amendment.

According to the complaint, the strip-search policy in place at CCI permits female correctional officers to participate routinely in visual body-cavity searches of male prisoners. Plaintiff alleges that prisoners at CCI are subjected to nude, full-body cavity searches before and after being released for outdoor exercise. Upon leaving or returning from outdoor exercise, correctional officers line prisoners up in groups of six in each housing unit's "chow hall" and then order the prisoners to disrobe. First Amended Complaint, p. 4: 1-4. Prisoners are then given body-cavity search directives by one correctional officer while another officer searches the prisoners' clothing close by. The complaint states that female correctional officers actively participate in conducting the body-cavity searches by either giving body-cavity search directives or searching the

1  prisoners' clothing.  Plaintiff alleges that on several occasions, female and male officers appeared
2  to be jeering and laughing at Plaintiff and other prisoners during the body-cavity searches.
3        Plaintiff states that the strip-search policy at CCI is humiliating, degrading, and caused him
4  to suffer emotional and psychological injury, including muscle strain, heart palpitations, chronic
5  anxiety, and post traumatic stress disorder.

### B. Fourth Amendment Claim

The Fourth Amendment's protection against unreasonable searches extends to incarcerated prisoners. Michenfelder v. Sumner, 860 F.2d 328, 332 (9th Cir. 1988) (citing Bell v. Wolfish, 441 U.S. 520, 558 (1979)).[1]  In determining the reasonableness of a search under the Fourth Amendment "[c]ourts must consider the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted." Bell, 441 U.S. at 559. The reasonableness of a prisoner search is determined by reference to the prison context. Michenfelder, 860 F.2d at 332. "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 79 (1987).

Prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited. Jordan v. Gardner, 986 F.2d 1521, 1524 (9th Cir. 1993); see also Michenfelder, 860 F.2d 328 (visual body-cavity searches of male inmates conducted within view of female guards held constitutional);[2] Grummet v. Rushen, 779 F.2d 491, 492 (high potential for female guards to view male inmates disrobing, showering, and using toilet facilities did not render prison policies unconstitutional); Rickman v. Avaniti, 854 F.2d 327, 327-28 (9th Cir. 1988) (routine visual body-cavity searches of prisoners held constitutional); Thompson v. Souza, 111 F.3d 694, 700-01 (9th Cir. 1997) (visual body-cavity search of prisoners conducted in public held constitutional). Although

---

[1] In Bell, the Supreme Court assumed *arguendo* that prisoners retain some Fourth Amendment protection but did not decide the issue. Five years later, in Hudson v. Palmer, 468 U.S. 517, 526 (1984), the Court held that the Fourth Amendment does not apply to searches of a prisoner's cell. "Notwithstanding the language of Hudson, [the Ninth Circuit]] has held that the Fourth Amendment...extends to incarcerated persons." Thompson v. Souza, 111 F.3d 694, 699 (9th Cir. 1997) (citations omitted).

[2] CCI's policy is distinguishable from the policy approved in Michenfelder because CCI's policy permits female guards to *conduct* body-cavity searches of male guards as a matter of routine.

3

visual body-cavity searches of male prisoners conducted within view of female officers are generally permissible, abusive cross-gender visual cavity searches may violate the Fourth Amendment's reasonableness standard. Somers v. Thurman, 109 F.3d 614, 622 n.5 (9th Cir. 1997) cert denied 522 U.S. 852 (1997). Further, "the purposeful subjection of prisoners to verbal assaults during strip searches performed by officials of the other sex serves no administrative purpose" and thus may be unreasonable.[3] Id.

### 1. Defendants Selbach, Rubin, Ortiz, and Payan

The complaint alleges that Defendants Selback, Rubin, Ortiz, and Payan ordered Plaintiff to strip and then gave Plaintiff body-cavity search directives. Although "it is highly questionable...whether prison inmates have a Fourth Amendment right to be free from routine unclothed searches by officials of the opposite sex," Somers, 109 F.3d at 622, without further development of the record, the Court cannot say that Defendants' conduct was reasonable under the Fourth Amendment as a matter of law, see Jordan, 986 F.2d at 1524 ("whether inmates possess privacy interests that could be infringed by the cross-gender aspect of otherwise constitutional searches is a difficult and novel question...that cannot be dismissed lightly"). Accordingly, under minimal federal notice pleading standards, the Court finds that Plaintiff's allegations are sufficient to allow him to proceed against Defendants Selbach, Rubin, Ortiz, and Payan for violation of Plaintiff's Fourth Amendment rights. Fed. R. Civ. P. 8(a); Erickson v. Pardus, 127 S.Ct. 2197, 2200 (2007); Alvarez v. Hill, 518 F.3d 1152, 1157-58 (9th Cir. 2008).

### 2. Defendants Pantoja, Wood, Yoder, and Fernandez

The complaint alleges that Defendants Pantoja, Wood, Yoder, and Fernandez participated in body-cavity searches of Plaintiff by searching his clothing three to four feet away from where Plaintiff was being given the body-cavity search directives. Individuals may be held liable under section 1983 where they personally participate in an alleged deprivation of a constitutional right. See e.g., Hansen v. Black, 885 F.2d 642, 646 (9th Cir. 1989) (discussing supervisory liability).

---

[3] Plaintiff alleges that on several occasions, correctional officers who are not named as Defendants in this action laughed at Plaintiff and other prisoners during their body-cavity searches. Such conduct does not rise to the level of abuse required to transform an otherwise permissible search into an unreasonable search. See Somers, 109 F.3d at, 622 n.5 (pointing and laughing at nude inmates during search insufficient to render search unreasonable).

4

Accordingly, under minimal federal notice pleading standards, the Court finds that Plaintiff's allegations are sufficient to allow him to proceed against Defendants Pantoja, Wood, Yoder, and Fernandez for violation of Plaintiff's Fourth Amendment rights. Fed. R. Civ. P. 8(a); Erickson, 127 S.Ct. at 2200; Alvarez, 518 F.3d at 1157-58.

### 3. Defendants Zanchi and Carrasco

Supervisory personnel are generally not liable under section 1983 for the actions of their employees under a theory of respondeat superior and, therefore, when a named defendant holds a supervisory position, the causal link between him and the claimed constitutional violation must be specifically alleged. See Fayle v. Stapley, 607 F.2d 858, 862 (9th Cir. 1979); Mosher v. Saalfeld, 589 F.2d 438, 441 (9th Cir. 1978), cert. denied, 442 U.S. 941 (1979). A prisoner may state a claim for relief against supervisory personnel under section 1983 by alleging that the officials knew of the violations and failed to act to prevent them or "implemented a policy so deficient that the policy 'itself is a repudiation of constitutional rights' and is 'the moving force of the constitutional violation.'" Hansen, 885 F.2d at 646 (internal citations omitted); Taylor v. List, 880 F.2d 1040, 1045 (9th Cir. 1989).

The complaint alleges that Defendant Zanchi authorized or approved the body-cavity search policy at CCI. The complaint also alleges that Defendant Carrasco had knowledge of the body-cavity search policy at CCI, had the authority to override the policy, and failed to act to discontinue the policy. Under minimal federal notice pleading standards, the Court finds that Plaintiff's allegations are sufficient to allow him to proceed against Defendants Zanchi and Carrasco for violation of Plaintiff's Fourth Amendment rights. Fed. R. Civ. P. 8(a); Erickson, 127 S.Ct. at 2200; Alvarez, 518 F.3d at 1157-58.

### 4. Defendant Matzen and Grannis

The complaint alleges that Defendants Matzen and Grannis denied Plaintiff's administrative grievances concerning CCI's body-cavity search policy. Rejecting an administrative complaint about a completed act of misconduct does not expose a person to liability under section 1983. George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007). Accordingly, the complaint fails to state a claim for relief against Defendants Matzen and Grannis for violating Plaintiff's Fourth Amendment rights.

5

**5.      Defendants Buentiempo, Smith, and Sandoval**

The complaint alleges that on several occasions, Defendants Smith and Sandoval were stationed in a gun-tower overlooking the area where Plaintiff was subjected to a body-cavity search. Plaintiff alleges that Defendants Smith and Sandoval were closely observing the search. The complaint also states that Defendant Buentiempo was present in the yard while Plaintiff was subjected to a body-cavity search on one occasion.

Even assuming Defendants passive presence in a place that allowed them to observe Plaintiff's search in some way violates Plaintiff's Fourth Amendment rights, such surveillance is reasonable under the Fourth Amendment. See Grummet, 779 F.2d at 495-96 (where "observations of [nude] inmates are restricted by distance and are casual in nature...." prisoners' Fourth Amendment rights not violated.) "To restrict female guards from positions which involve occasional viewing of [nude] inmates would necessitate a tremendous rearrangement of work schedules and possibly produce a risk to both internal security needs and equal employment opportunities for female guards...therefore...such surveillance is justified under the Fourth Amendment." Id.; see also Michenfelder, 860 F.2d at 333 (policy allowing body-cavity searches within view of female guards held constitutional because policy was reasonably related to penological interests). Further, Plaintiff can point to no acts or omissions of Defendants Smith, Sandoval, and Buentiempo that were causally linked to the constitutional violation of which Plaintiff complains; Defendants were simply stationed at their assigned posts and took no action that caused the body-cavity search of Plaintiff to proceed. Accordingly, the complaint fails to state a claim against Defendants Smith, Sandoval, and Buentiempo. See Hydrick v. Hunter, 500 F.3d 978, 987-88 (9th Cir. 2007) (complaint must state what each named defendant did that led to the deprivation of Plaintiff's constitutional or other federal rights).

**C.      Fourteenth Amendment Claim**

The Due Process Clause protects against the deprivation of liberty without due process of law. Wolff v. McDonnell, 418 U.S. 539, 556 (1974). In order to invoke the protection of the Due Process Clause, a plaintiff must first establish the existence of a liberty interest for which the protection is sought. The Fourteenth Amendment of the United States Constitution embodies a right

to privacy. E.g., York v. Story, 324 F.2d 450, 454 (9th Cir. 1963); Grummet, 779 F.2d at 493-94. The Fourteenth Amendment right to privacy extends to prisoners, Grummet, 779 F.2d at 493-94, and prisoners' privacy claims related to their exposure to cross-gender strip searches implicate the liberty component of the Fourteenth Amendment, Grummet, 779 F.2d at 494 n.1 (prisoners' claims best supported under Fourth Amendment and under liberty component of the Fourteenth Amendment). However, prisoners' privacy rights are subject to infringement by prison policies that are reasonably related to legitimate penological interests. Thompson, 111 F.3d 701-02 (reasonableness test set forth in Turner applies whenever the needs of prison administration implicate constitutional rights). The Fourteenth Amendment right to privacy is broader than the Fourth Amendment's right to privacy because the Fourteenth Amendment prohibits violations of privacy that are not searches within the meaning of the Fourth Amendment. See York, 324 F.2d at 454 (applying Fourteenth Amendment privacy analysis because deciding Fourth Amendment issue would not resolve claims unrelated to actual search).

### 1. Defendants Selbach, Rubin, Ortiz, Payan, Pantoja, Wood, Yoder, Fernandez, Zanchi, and Carrasco

For the reasons discussed above in Section B, the allegations of the complaint are sufficient to state a claim against Defendants Selbach, Rubin, Ortiz, Payan, Pantoja, Wood, Yoder, Fernandez, Zanchi, and Carrasco for violating Plaitniff's Fourteenth Amendment right to privacy. See Grummet, 779 F.2d at 498 (incorporating Fourteenth Amendment analysis into Fourth Amendment analysis section and reaching same conclusion as to both claims); see also Somers, 109 F.3d at 619 (applying Fourteenth Amendment right to privacy through Fourth Amendment framework); Thompson, 111 F.3d at 701-02 (analyzing claim as Fourth Amendment issue only and omitting discussion of prisoner's privacy rights from Fourteenth Amendment analysis); Michenfelder, 860 F.2d at 332-34 (reaching same conclusion on Fourth and Fourteenth Amendment claims).

### 2. Defendants Buentiempo, Smith, Sandoval, Matzen, and Grannis

As discussed above in Section B, the complaint fails to allege that Defendants Buentiempo, Smith, Sandoval, Matzen, and Grannis committed any acts or omissions that were causally linked to the constitutional violations Plaintiff complains of. Accordingly, the complaint fails to state a

///

7

claim against Defendants Buentiempo, Smith, Sandoval, Matzen, and Grannis for violation of Plaintiff's right to privacy under the Fourteenth Amendment. See Hydrick, 500 F.3d at 987-88.

### D.     Eighth Amendment Claim

The Eighth Amendment protects prisoners from inhumane methods of punishment and from inhumane conditions of confinement. Morgan v. Morgensen, 465 F.3d 1041, 1045 (9th Cir. 2006). In some instances, infliction of emotional pain may constitute cruel and unusual punishment prohibited by the Eighth Amendment. See Jordan, 986 F.2d at 1524 (holding that contact searches of female prisoners by male guards violated Eighth Amendment.)  Prison officials are not liable for inflicting pain on a prisoner through body-search techniques unless the officials act with deliberate indifference to a serious risk of harm to the prisoners. Id. at 1528.

Plaintiff fails to allege that Defendants had knowledge of a serious risk of harm to Plaintiff. Although Plaintiff makes the conclusory allegation that all Defendants acted with deliberate indifference, Plaintiff does not allege that Defendants had knowledge that the search policy at CCI would inflict serious psychological trauma or injury on Plaintiff.
Accordingly, the complaint fails to state an Eighth Amendment claim against Defendants. See id. at 1528-29 (holding that Defendant was deliberately indifferent because Defendant had advanced knowledge of psychological trauma that would be caused by cross-gender search policy).

### III.    Conclusion and Recommendation

The complaint states claims against Defendants Selbach, Rubin, Ortiz, Payan, Pantoja, Wood, Yoder, Fernandez, Carrasco, and Zanchi for violating Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.  The complaint does not state any other claims.  Plaintiff was previously provided with the opportunity to amend to cure the deficiencies but was unable to do so. Noll v. Carlson, 809 F.2d 1446, 1448-49 (9th Cir. 1987).  Accordingly, it is HEREBY RECOMMENDED that:

1.  This action proceed on Plaintiff's amended complaint, filed June 24, 2008, against Defendants Selbach, Rubin, Ortiz, Payan, Pantoja, Wood, Yoder, Fernandez, Carrasco, and Zanchi for violating Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution;

2. Plaintiff's Eighth Amendment claim be dismissed, with prejudice, for failure to state a claim; and

3. Defendants Buentiempo, Smith, Sandoval, Matzen, and Grannis be dismissed based on Plaintiff's failure to state any claims upon which relief may be granted against them.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **thirty (30) days** after being served with these Findings and Recommendations, Plaintiff may file written objections with the Court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   February 2, 2009**             /s/ Sandra M. Snyder
                                          UNITED STATES MAGISTRATE JUDGE