**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| FATEEM L. JACKSON, | ) | CASE NO. 1:07-cv-01414-LJO-SMS PC |
| Plaintiff, | )<br>)<br>) | FINDINGS AND RECOMMENDATIONS RECOMMENDING THE MOTION TO |
| v. | )<br>) | DISMISS FILED ON NOVEMBER 23, 2009 BE DENIED |
| CDCR, et al., | )<br>) | (Doc. 32) |
| Defendants. | )<br>) | OBJECTIONS DUE WITHIN THIRTY DAYS |
| | ) | |

**I.   FINDINGS**

    **A.   Procedural History**

Plaintiff Fateem L. Jackson ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.  Plaintiff filed this action on September 27, 2007.  Pursuant to the Court's order of March 9, 2009, this action proceeds on Plaintiff's First Amended Complaint, filed June 24, 2008, against Defendants Selbach, Rubin, Ortiz, Payan, Pantoja, Wood, Yoder, Fernandez, Carrasco, and Zanchi for violating Plaintiff's rights under the Fourth and Fourteenth Amendments of the United States Constitution.[1]

On November 23, 2009, Defendants Selbach, Rubin, Payan, Pantoja, Wood, Yoder,

---

[1] On March 9, 2009, Plaintiff's Eighth Amendment claim was dismissed, with prejudice, for failure to state a claim; and Defendants Buentiempo, Smith, Sandoval, Matzen, and Grannis were dismissed based on Plaintiff's failure to state any claims upon which relief may be granted against them.

1

Carrasco, and Zanchi filed a motion to dismiss for failure to exhaust administrative remedies on Plaintiff's claims against Defendants Pantoja, Payan, Rubin, Selbach, Wood, and Yoder (hereinafter "the Female Defendants"), Fed. R. Civ. P. 12(b), and all moving Defendants assert that they are entitled to qualified immunity. Plaintiff filed an opposition on February 1, 2010. Despite passage of ample time, Defendants did not file a reply. The motion has been deemed submitted. Local Rule 230(l).

### B.     Failure to Exhaust

#### 1.     Legal Standard

Defendants argue that Plaintiff failed to exhaust his claims in compliance with 42 U.S.C. § 1997e(a), subjecting the claims to dismissal. Section 1997e(a) of the Prison Litigation Reform Act of 1995 provides that "[n]o action shall be brought with respect to prison conditions under [42 U.S.C. § 1983], or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Prisoners are required to exhaust available administrative remedies prior to filing suit. *Jones v. Bock*, 549 U.S. 199, 211 (2007); *McKinney v. Carey*, 311 F.3d 1198, 1199-1201 (9th Cir. 2002). Exhaustion is required regardless of the relief sought by the prisoner and regardless of the relief offered by the process, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and the exhaustion requirement applies to all prisoner suits relating to prison life, *Porter v. Nussle*, 435 U.S. 516, 532 (2002).

The California Department of Corrections and Rehabilitation (hereinafter "CDCR") has an administrative grievance system for prisoner complaints. Cal. Code Regs., tit. 15 § 3084.1 (West 2009). The process is initiated by submitting a CDCR Form 602 (hereinafter "CDCR 602"). *Id.* at § 3084.2(a). Four levels of appeal are involved, including the informal level, First Formal Level, Second Formal Level, and Third Formal Level, also known as the "Director's Level." *Id.* at § 3084.5. Appeals must be submitted within fifteen working days of the event being appealed, and the process is initiated by submission of the appeal to the informal level, or in some circumstances, the first formal level. *Id.* at §§ 3084.5, 3084.6(c). In order to satisfy

section 1997e(a), California state prisoners are required to use this process to exhaust their claims prior to filing suit. *Woodford v. Ngo*, 548 U.S. 81, 85-86 (2006); *McKinney*, 311 F.3d at 1199-1201.

Section 1997e(a) does not impose a pleading requirement, but rather, is an affirmative defense under which a defendant has the burden of raising and proving the absence of exhaustion. *Jones*, 127 S.Ct. at 921; *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th Cir. 2003). The failure to exhaust nonjudicial administrative remedies that are not jurisdictional is subject to an unenumerated Rule 12(b) motion, rather than a summary judgment motion. *Wyatt*, 315 F.3d at 1119 (citing *Ritza v. Int'l Longshoremen's & Warehousemen's Union*, 837 F.2d 365, 368 (9th Cir. 1998) (per curium)). In deciding a motion to dismiss for failure to exhaust administrative remedies, the Court may look beyond the pleadings and decide disputed issues of fact. *Wyatt*, 315 F.3d at 1119-20. If the Court concludes that the prisoner has failed to exhaust administrative remedies, the proper remedy is dismissal without prejudice. *Id.*

### 2. **Plaintiff's Claims**

According to the First Amended Complaint, the strip-search policy at CCI, implemented in October of 2006 subsequent to an attack on prison staff by a single inmate, permits female correctional officers to participate routinely in visual body-cavity searches of male prisoners. Plaintiff alleges that prisoners at CCI are subjected to nude, full-body cavity searches before and after being released for outdoor exercise. Upon leaving or returning from outdoor exercise, correctional officers line prisoners up in groups of six in each housing unit's "chow hall" and then order the prisoners to disrobe. Prisoners are then given body-cavity search directives by one correctional officer while another officer searches the prisoners' clothing near by. The First Amended Complaint states that female correctional officers actively participate in conducting the body-cavity searches by either giving body-cavity search directives or searching the prisoners' clothing. The First Amended Complaint alleges that: Defendants Selback, Rubin, and Payan ordered Plaintiff to strip and then gave Plaintiff body-cavity search directives; and Defendants Pantoja, Wood, and Yoder participated in body-cavity searches of Plaintiff by searching his

1  clothing three to four feet away from where Plaintiff was being given the body-cavity search
2  directives.
3     The First Amended Complaint was found to state claims against the Female Defendants
4  for their direct involvement in and/or near proximity during the routine visual body-cavity
5  searches upon release to and return from outdoor exercise and against Defendants Zanchi and
6  Carrasco for authorizing or approving the body-cavity search policy at CCI, and for failing to act
7  to discontinue the policy when the emergency no longer existed, despite knowledge of the policy
8  and authority to change it, in violation of Plaintiff's rights under the Fourth and Fourteenth
9  Amendments of the United States Constitution.  (Doc. 17, Screen F&R; Doc. 19, O Adopt.)
10    Thus, these are the claims that Plaintiff must have brought to the attention of prison
11 personnel and pursued through all available administrative remedies in order to have met the
12 exhaustion prerequisite to filing this action.

13     **3.     Discussion/Analysis**

14    The PLRA's exhaustion requirement is designed to "afford [ ] corrections officials time
15 and opportunity to address complaints internally before allowing the initiation of a federal case."
16 *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002).  "[W]hen a prison's grievance procedures are
17 silent or incomplete as to factual specificity, 'a grievance suffices if it alerts the prison to the
18 nature of the wrong for which redress is sought.'" *Griffin v. Arpaio*, 557 F.3d 1117, 1120 (9th
19 Cir. 2009) quoting *Strong v. David*, 297 F.3d 646, 650 (7th Cir.2002).  "As in a notice pleading
20 system, the grievant need not lay out the facts, articulate legal theories, or demand particular
21 relief. All the grievance need do is object intelligibly to some asserted shortcoming." *Strong*, 297
22 F.3d at 650.  The *Strong* standard advances the primary purpose of a grievance: to notify the
23 prison of a problem. *See Johnson v. Johnson*, 385 F.3d at 522, cited with approval in *Jones*, 549
24 U.S. at 219.  The Ninth Circuit has adopted the standard articulated in *Strong* as the appropriate
25 standard to be used when evaluating the sufficiency of an inmate's grievance for exhaustion
26 purposes.  *Griffin*, ref *Kikumura v. Osagie*, 461 F.3d 1269, 1285 (10th Cir.2006), overruled on
27 other grounds by *Robbins v. Oklahoma*, 519 F.3d 1242 (10th Cir.2008); *Johnson v. Johnson*, 385
28

F.3d 503, 517 (5th Cir.2004); *Johnson v. Testman*, 380 F.3d 691, 697 (2d Cir.2004); *Burton v. Jones*, 321 F.3d 569, 575 (6th Cir.2003), abrogated on other grounds by *Jones v. Bock*, 549 U.S. at 217; *Strong*, 297 F.3d at 650.

In April of 2007,[2] Plaintiff filed a CDCR 602 (hereinafter "the April 602"). Plaintiff pursued the April 602 through to the Director's Level where it was ultimately denied on August 8, 2007, such that he exhausted the available administrative remedies on the claims raised therein. (Doc. 14, 1st Amend. Compl., pp. 26-32.) In the April 602, Plaintiff clearly complained of being subjected to routine visual body-cavity searches performed by and/or in close proximity to female guards on yard release/recall when the situation no longer presented an emergency with life or death consequences – i.e. on a routine basis. (*Id.,* at p. 26.) In his opposition, Plaintiff submitted copies of another CDCR 602 he filed in February of 2008 (some five months after filing this action) which he pursued through to the Director's Level. (Doc. 36, Plnt. Opp., pp. 27-32.) However, the CDCR 602 filed in February of 2008 does not show timely exhaustion on Plaintiff's part as a CDCR 602 initiated after the date a lawsuit was filed clearly could not have been exhausted prior to filing suit. The April 602 is thus the only inmate appeal by Plaintiff regarding the routine visual body-cavity searches performed by and/or in close proximity to female guards applicable to this motion. Defendants do not dispute that the April 602 specifically complained of the routine visual body-cavity searches performed by and/or in close proximity to female guards upon release for and return from outdoor exercise for a prolonged, non-exigent period of time. Defendants also do not dispute that Plaintiff pursued the April 602 through to the Director's Level. Rather, Defendants dispute the applicability of the April 602 to the Female Defendants' actions and the timing of it relevant to Plaintiff's allegations in the First Amended Complaint.

Defendants argue that Plaintiff did not exhaust his administrative appeals as to his claims against the Female Defendants since he did not name and/or otherwise individually identify them

---

[2] This CDCR 602 is stamped as received by CCI-Tehachapi's Appeals Office on April 6, 2007, but was signed by Plaintiff on April 3, 2007.

in the April 602.  (Doc. 32, Def. MTD, pp. 6-7.)

Yet, since the CDCR 602 form merely directs a prisoner to "Describe Problem," the April 602 met the notice requirement on Plaintiff's claim that his rights under the Fourth Amendment were violated when he was subjected to routine visual body-cavity searches performed by and/or in close proximity to female guards, regardless of whether he named the individual female officers who actually conducted or were present during the unclothed body searches.  In other words Plaintiff is not foreclosed from pursuing claims against the Female Defendants for conducting or being present during unclothed body searches of male inmates merely because he did not name and/or otherwise specifically identify the Female Defendants in a CDCR 602 as, per *Strong*, Plaintiff need not lay out the facts, articulate legal theories, or demand particular relief – let alone name/identify specific defendant actors.

Defendants also argue that, while Plaintiff filed a CDCR 602 regarding the unclothed body searches by female officers, the actions of the Female Defendants that Plaintiff complains of (from May 20, 2007 through August 29, 2007) did not take place until after Plaintiff initiated the April 602 such that Plaintiff could not have exhausted his claims against the Female Defendants in the April 602.  (Doc. 32, Def. MTD, pp. 6-7.)

Yet, the visual body-cavity searches performed by and/or in close proximity to female guards that Plaintiff describes both in the First Amended Complaint and in the April 602 were not isolated instances; rather Plaintiff complained because the offensive searches continued over an extended time frame such that they became the routine/normal procedures.  Thus, the April 602 objected intelligibly to the search procedures to sufficiently give prison officials notice and opportunity to implement corrective measures.  That the offensive situation continued and recurred on a routine basis after Plaintiff filed the April 602 does not foreclose Plaintiff from having sufficiently raised the issue to have exhausted available administrative remedies thereon.  It would be nonsensical and against the spirit of the notice facet of this area of law to require Plaintiff to file and pursue a CDCR 602 every time he was subjected to an offending practice, that had become *routine*.  Extending this premise reveals its absurdity – if Plaintiff were required

to file a CDCR 602 for every instance he encountered the now routine offending practice, would he then also have had to file separate CDCR 602s for a visual body-cavity searches performed by and/or in close proximity to female guards on release to outdoor exercise and another for the search on return from outdoor exercise where both occurred on the same day?  Further, if Plaintiff had attempted to file a CDCR 602 each day that he was subjected to the visual body-cavity searches performed by and/or in close proximity to female guards on release to and return from outdoor exercise without specifying dates and names of prison personnel (which he was not required to do), most if not all such filings subsequent to the first would have undoubtedly fallen subject to being screened out as duplicative of prior filings.

Accordingly, Plaintiff's April 602 sufficiently notified prison personnel of his claims regarding being subjected to unclothed body searches by and/or in close proximity to female officers on a routine basis to have exhausted the available administrative remedies such that the motion to dismiss filed on November 23, 2009 should be denied.

**B.  Qualified Immunity**

**1.  Legal Standard**

Defendants also argue that they are entitled to qualified immunity.  Government officials enjoy qualified immunity from civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  "Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' " *Saucier v.Katz*, 533 U.S. 194, 200 (2001) (*quoting Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985), overruled on other grounds by *Pearson v. Callahan*, --- U.S. ----, ----, 129 S.Ct. 808, 818 (2009)).  Thus, if a constitutional violation occurred, prison officials are entitled to qualified immunity if they acted reasonably under the circumstances. *Millender v. County of Los Angeles*, 564 F.3d 1143, 1148 (9th Cir. 2009).

"Qualified immunity balances two important interests - the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably," *Pearson v.*

*Callahan*, ___ U.S. ___, 129 S.Ct. 808, 815 (2009), and protects "all but the plainly incompetent or those who knowingly violate the law," *Malley v. Briggs*, 475 U.S. 335, 341 (1986).  In applying the two-part qualified immunity analysis, it must be determined whether, taken in the light most favorable to Plaintiff, Defendants' conduct amounted to a constitutional violation, and . . . whether or not the right was clearly established at the time of the violation. *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 2156 (2001); *McSherry v.City of Long Beach*, 560 F.3d 1125, 1129-30 (9th Cir.2009).  These prongs need not be addressed by the Court in any particular order. *Pearson v. Callahan*, 129 S.Ct. 808.  "The relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Norwood v. Vance*, 591 F.3d 1062, 1068 (9th Cir. 2010) (*ref. Saucier v. Katz*, 533 U.S. 194, 201-02 (2001).

      The Complaint alleges that, as a result of an alleged attempted murder of prison staff by a lone inmate, a strip search policy was initiated for general population inmates upon release for and recall from outdoor exercise, whereby Plaintiff was subjected to visual, unclothed, body cavity searches by female officers variously beginning in "late 2006" and continuing for almost a year. (Doc. 14, 1st Amend. Compl., pp. 6-12.)

      Defendants argue that, at the time in question in the First Amended Complaint, "clearly established" authority existed upon which a reasonable prison official in Defendants' position(s) would have believed that the routine visual body-cavity strip searches of male inmates by female guards, subsequent to a murder attempt on staff by an inmate were reasonable, justified, and necessary to protect prison officials and inmates.  (Doc. 32, MTD, p. 8.)

      On Defendant's motion to dismiss at the pleading stage, the Court is limited to a review based on the allegations set forth in Plaintiff's pleading.  As alleged in the First Amended Complaint, the reason for the initiation of routine visual body-cavity searches was one incident in October of 2006 where one inmate attempted to kill a correctional officer.  On page 8 of their motion, Defendants allege that Defendants Carrasco and Zanthi were not on notice that their alleged actions (of authorizing the strip search policy and/or failing to change or discontinue the

1  policy after Plaintiff complained), and that the Female Defendants were also not on notice that

2  their involvement in and proximity to the visual body-cavity searches of male inmates constituted

3  a violation of Plaintiff's rights, as the "clearly established" law at that time held that:

> Prisoners' legitimate expectations of bodily privacy from persons of the opposite sex are extremely limited. *Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th Cir. 1993); *see also Michenfelder*, 860 F.2d 328 (visual body-cavity searches of male inmates conducted within view of female guards held constitutional);[3] *Grummet v. Rushen*, 779 F.2d 491, 492 (high potential for female guards to view male inmates disrobing, showering, and using toilet facilities did not render prison policies unconstitutional); *Rickman v. Avaniti*, 854 F.2d 327, 327-28 (9th Cir. 1988) (routine visual body-cavity searches of prisoners held constitutional); *Thompson v. Souza*, 111 F.3d 694, 700-01 (9th Cir. 1997) (visual body-cavity search of prisoners conducted in public held constitutional).[4]

10  However, while it has been held that "it is highly questionable . . . whether prison inmates have a

11  Fourth Amendment right to be free from routine unclothed searches by officials of the opposite

12  sex," *Somers v. Thurman*, 109 F.3d 614, 622 (9th Cir. 1997), without further development of the

13  record, the Court cannot say that Defendants' conduct was reasonable under the Fourth

14  Amendment as a matter of law, *see Jordan v. Gardner*, 986 F.2d 1521, 1524 (9th Cir. 1993)

15  ("whether inmates possess privacy interests that could be infringed by the cross-gender aspect of

16  otherwise constitutional searches is a difficult and novel question . . . that cannot be dismissed

17  lightly").  Further, the Fourth Amendment guarantees the right of the people to be secure against

18  unreasonable searches, and its protections are not extinguished upon incarceration. *Michenfelder*

19  *v. Sumner*, 860 F.2d 328, 332 (9th Cir.1988); *Bell v. Wolfish*, 441 U.S. 520, 558-60 (1979), and

20  *Turner v. Safley*, 482 U.S. 78, 87-91 (1987).  While there are cases that have found no violation

21  for minimal exposure to prison officials of the opposite sex, see *Grummett*, 779 F.2d at 495-96

22  (pat-down searches of male inmates that included groin area by female guards do not violate

---

[3] CCI's policy is distinguishable from the policy approved in *Michenfelder* because CCI's policy permits female guards to conduct body-cavity searches of male guards as a matter of routine.

[4] It is noteworthy that the law cited by Defendants to show that their actions were reasonable so as to entitle them to qualified immunity is a direct quote from this Court's finding and recommendation on screening wherein these cases were acknowledged, but were not found to be determinative such that the alleged actions by Defendants were deemed adequate for Plaintiff to state cognizable claims for a violation of his constitutional rights.

Fourth Amendment); *Michenfelder*, 860 F.2d at 334 (occasional visual strip searches of male inmates by female guards do not violate Fourth Amendment), the frequency and scope of permissible cross-gender searches (in *Grummett* and *Michenfelder*) were significantly less invasive and far less frequent than the searches at issue here, and permissible routine visual body-cavity searches (in *Rickleman*) were not cross-gender.

    At the time in question in the First Amended Complaint, the most recent decisions did not address routine visual body-cavity searches performed by and/or in close proximity to female guards of general population inmates with sufficient specificity, nor did historical precedent provide a basis upon which it would have been reasonable for prison officials to believe the practice which Plaintiff objected to was lawful. In fact, inferences drawn from historical legal precedent imply that it should have been clear to a reasonable officer that routine visual body-cavity searches performed by and/or in close proximity to female guards in a non-emergent setting were unlawful. Thus, the Court cannot say that, as a matter of law, Defendants are entitled to qualified immunity at this point in the litigation.

    Further, Plaintiff's allegations were sufficient at the pleading stage to allow him to proceed on allegations for violation of Plaintiff's Fourth Amendment rights. Yet, Defendants have provided no information upon which to ascertain whether, in light of the totality of the circumstances, the Defendants' actions were reasonable. Indeed, Defendants can present only limited factual evidence outside the pleadings in a motion to dismiss, *Wyatt*, 315 F.3d at 1119-1120. Thus, Defendants' entitlement to qualified immunity, cannot be fully reviewed until evidentiary submissions are made.

    Defendants' argument appears further based on the premise that the visual body-cavity searches continued for months after the initial attempt to murder staff because of threats of violence jeopardizing the safety and security of the institution, but this has not actually been pled. In fact, Plaintiff appears to allege that the offensive searches continued for months and months after the attack was investigated and the single inmate involved therein was apprehended as a way to punish the general population for the attack on the officer in October of 2006. (Doc. 14,

1ˢᵗ Amend. Compl., p. 9.)  The Fourth Amendment protects prisoners from unreasonable searches and seizures as strip searches that are excessive, vindictive, harassing, or unrelated to any legitimate penological interest are not reasonable.  *Michenfelder*, 860 F.2d at 332.

It is simply not clear why the visual body-cavity searches before and after outdoor exercise continued for almost a year after the attack of a prison official by a single inmate.  At this time, the Court cannot reach the argument that Defendants are entitled to qualified immunity on the ground that it was reasonable for them to believe the almost year long visual body-cavity searches performed by and/or in close proximity to female guards before and after outdoor exercise of the entire general population was reasonable.  The record needs further factual development with respect to the nature of the searches including, critically, the stated justification.  Only then may the Court properly address whether Defendants acted reasonably.

Accordingly, Defendants' motion to dismiss based on their entitlement to qualified immunity should be denied.

## II.   Conclusions and Recommendations

Defendants have not shown that they are entitled to dismissal of Plaintiff's claims against them for failure to exhaust his administrative remedies as they have not shown that Plaintiff did not exhaust the available administrative remedies on his allegations regarding the routine visual body-cavity searches being performed by, and/or in the near proximity to female guards before he filed this action.  Defendants also have not shown that they are entitled to qualified immunity so as to justify dismissal of Plaintiff's claims against them at this stage in the litigation.

Accordingly, the Court HEREBY RECOMMENDS that the motion to dismiss, filed November 23, 2009 by Defendants Selbach, Rubin, Payan, Pantoja, Wood, Yoder, Carrrasco, and Zanchi be DENIED in its entirety.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within **thirty (30) days** after being served with these Findings and Recommendations, the parties may file written objections with the court.  The document should be captioned "Objections to

Magistrate Judge's Findings and Recommendations." The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   April 21, 2010**              /s/ Sandra M. Snyder
                                                 UNITED STATES MAGISTRATE JUDGE